247 A.2d 839.

BUILDERS IRON WORKS, INC. *vs.* WILLIAM MURPHY.

NOVEMBER 22, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is an employer's petition to review a decree awarding the employee benefits for partial incapacity. The trial commissioner, finding that the employee's incapacity for work had ended and his earning capacity regained, ordered suspension of the payment of compensation benefits. On review, with one commissioner dissenting, the full commission affirmed, and the case is now here on the employee's appeal.

In 1965 the employer was engaged in the reconstruction of the Crawford Street bridge in Providence and the employee was engaged as a timekeeper at an average weekly salary of $100. He sustained a disabling compensable injury to his right knee on September 24, 1965, and was thereafter paid benefits for disability pursuant to a preliminary agreement. In 1967 on an earlier petition for review he was found to be only partially incapacitated and to have an earning capacity of $42.50 per week which was the amount of his salary as a city councilman. His benefits were then reduced to those payable for partial incapacity with a maximum of $22 a week. In the interval between that decree and the filing of this petition the employee performed no additional work except to run errands for a friend engaged in the insurance and real estate business for which he received a nominal payment.

At the time of his injury in 1965 his duties were to keep records of the hours worked by employees on the bridge construction job, to act as paymaster, to order and buy incidental supplies, and occasionally to drive a truck. In addition he was called upon to deliver instructions and messages from the employer's field office to the workers engaged in constructing the bridge. In order to reach them it was sometimes necessary that he walk along the girders or beams which were being incorporated into the bridge. These girders were eight to ten inches wide and approximately eight to thirteen feet above open water.

The crucial issues are whether the employee has sufficiently recovered from his injury to be able to resume his regular work, or, if not, whether, regardless of any residual effects, he has regained his former earning capacity. Of course, the general rule is that one who has physically recovered to an extent that permits the resumption of his former employment without harmful consequences is not entitled to weekly compensation benefits. *E. Turgeon Const. Co.* v. *Barbato,* 81 R. I. 230, 101 A.2d 481. The rule is different, however, where an employee's physical recovery is not complete and he has residual effects from his injury. Then the extent of his earning capacity, rather than his physical capabilities, is all important because under our act compensation is paid not for physical disabilities but for an impairment or loss of earning capacity flowing from the injury. *Peloso, Inc.* v. *Peloso,* 103 R. I. 294, 237 A.2d 320; *United Wire & Supply Corp.* v. *Frenier,* 87 R. I. 31, 137 A.2d 414; *Brown & Sharpe Mfg. Co.* v. *Vincent,* 73 R. I. 309, 55 A.2d 729.

The employer in this case, while recognizing these principles, elected to try its case on the theory that the employee's recovery was sufficiently complete to permit him to perform his former duties, and having made that election, it hewed closely to that theory in trying the case and

it offered no evidence concerning what effect the residuals of the employee's disabling injury, if any, had on his earning capacity.

The single commissioner found in the employer's favor and, notwithstanding the theory on which the case had been tried, premised his conclusion, at least in part, upon findings that work was available to the employee as a timekeeper which would not require that he walk on narrow girders high above the water, and that such work was well within his physical capacity to perform. Implicit in his decision, of course, was the further finding that the employee's earnings from the work he was physically able to do would at least equal the pay he was receiving when he suffered the disabling injury. The absence of an evidentiary foundation for those findings need not concern us because the majority of the full commission, on review, gave no heed to them and they are not, therefore, before us. *Moniz* v. *F. D. McGinn, Inc.*, 102 R. I. 394, 230 A.2d 837; *Balcom* v. *Providence Sheraton Corp.*, 98 R. I. 357, 201 A.2d 913.

At the full commission level the case was considered as if the dispositive issue were whether or not the employee could fully perform his former duties. On that issue the majority found that he had "* * * recovered from the effects of his knee injury to the extent that he is able to do all the duties required of his former employment including the occasional walking on the steel girder." Predicated on that finding, they affirmed the suspension order.

When we look to the record to ascertain if it contains a factual basis for the majority's conclusion, we find ample evidence confirming the employee's good recovery and attesting to his present capability to perform on a full time basis *most* of the tasks which were required of him at the time of his injury. It is bereft, however, of any evidence, direct or inferential, showing either that he can perform *all* of those tasks or, more particularly, that he is able to walk

in safety along the narrow girders or walkways of an unfinished bridge. Indeed, the testimony bearing on this subject points to a contrary conclusion. It came from the employee's attending physician as well as from the physician who examined him on behalf of the employer. While both agreed that he could perform *most* of his former duties, each attached qualifications when questioned about his ability to walk on narrow girders.

The testimony of the examining physician was definitive. In answer to an inquiry concerning the employee's ability to "climb over bridge girders that are approximately eight, ten inches in width, with nothing to support himself, these bridge girders being approximately eight to thirteen feet above open water," the doctor replied that there was "some limitation in his ability to do this," that he "would suggest he not do it," and that he would recommend against it. There can be no doubt that in his judgment the employee was unable to resume this aspect of his former duties.

The testimony of the attending physician, although couched differently, has the same ultimate effect. He said that the questioned activity, while within the employee's physical capabilities, would be dangerous and might lead to serious trouble because of the possibility that his knee might give out from under him. Certainly, we are not prepared to say that an employee is for compensation purposes able to resume his former duties if he cannot do so without harm to himself. *Brown & Sharpe Mfg. Co.* v. *Vincent, supra,* at 313, 55 A.2d at 731.

The majority of the commission dismiss the foregoing medical testimony by saying that "* * * the mere possibility that the knee might buckle is not sufficient * * *" and that "fear of reinjury is not a valid reason for failure to return to work." Whatever the legal merits of those observations in some other context, they have none here because they

are obviously without reasonable relevance either to the testimony or to any inferences that might logically be deducible therefrom.

In sum, there is no legal evidence in the case establishing either that the employee has recovered sufficiently so that he can in safety resume his former occupation or that his earning capacity is unaffected by the residuals flowing from his injury. The employer, having failed to meet the burden which is its when it seeks a review, *Best Plastics, Inc.* v. *Grilli,* 101 R. I. 32, 219 A.2d 913, should not have been permitted to suspend future compensation payments.

The employee's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the workmen's compensation commission for the entry of a new decree in accordance with this opinion.

*Gunning & LaFazia, Bruce M. Selya, John F. McDonough,* for petitioner-appellee.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* for respondent-appellant.