Thomas DePETRILLO, Jr.

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, BOARD OF REVIEW.**

No. 91–622–M.P.

Supreme Court of Rhode Island.

April 19, 1993.

Shannon Gilheeney, Marc DeSisto, Carroll, Kelly & Murphy, Providence, for plaintiff.

Pat Nero, Cranston, for defendant.

## OPINION

MURRAY, Justice.

This case is before this court pursuant to a writ of certiorari filed by the plaintiff, Thomas DePetrillo, Jr. We deny the plaintiff's petition for certiorari.

Our assay of the record reveals that the facts and the procedural history of this case are as follows. On May 29, 1987, plaintiff filed for employment-security benefits with the Department of Employment Security (DES). The DES director determined that plaintiff did not meet the eligibility requirements for employment-security benefits and denied plaintiff's claim. The plaintiff appealed, and a hearing was held before a DES referee. The referee issued a decision which also found plaintiff ineligible for benefits. The plaintiff then appealed to the board of review of DES.

At a hearing before the DES board of review, plaintiff testified to the following. On January 1, 1986, plaintiff commenced work at the Rhode Island Department of the Attorney General as an investigator in the section 8 housing program, a program funded by the federal government. Approximately three months after plaintiff commenced work, a grand jury began investigating potential criminal conduct on the part of plaintiff in connection with plaintiff's employment. On March 25, 1986, then-Attorney General Arlene Violet suggested that plaintiff take a "leave without pay" during the grand-jury investigative process. The plaintiff testified that he took leave without pay with the belief that he could return to his job once the grand jury completed its investigation. The grand jury indicted plaintiff for obtaining money under false pretenses. The state later dismissed this indictment for lack of evidence.[1]

Although it is not exactly clear from the record, at some point the Department of the Attorney General changed plaintiff's status from leave without pay to suspended without pay and this change was made retroactive to March 26, 1986. On March 29, 1987, more than one year after plaintiff took the leave without pay, the Department of the Attorney General fired plaintiff. On May 29, 1987, plaintiff filed for unemployment benefits.

Following the hearing at which the aforementioned facts were established, the DES board of review issued a decision affirming the referee's denial of plaintiff's claim for benefits. The plaintiff then appealed to the District Court. A District Court judge affirmed the decision of the board of review, and in a written decision the District Court judge articulated three grounds to support the DES decision: (1) that plaintiff failed to comply fully with the statutory eligibility requirements found in G.L.1956 (1986 Reenactment) § 28-44-12, (2) that plaintiff was monetarily ineligible pursuant to § 28-44-11, and (3) that plaintiff failed to establish a "waiting period" in compliance with § 28-44-14.

## I

We begin by reviewing the District Court judge's decision which affirmed DES's denial of plaintiff's claim. The District Court judge held that plaintiff did not meet the eligibility requirements of § 28-44-12, which states:

"*Availability and Registration for work.*—An individual shall not be eligible for benefits for any week of his partial

---

1. The record does not contain a copy of the indictment filed against plaintiff. This information comes from the testimony of plaintiff transcribed at the hearing before the board of review.

or total unemployment unless during that week he is physically able to work and available for work. To prove availability for work, every individual partially or totally unemployed shall register for work and shall file claim for benefits at the employment office, within such time limits and with such frequency and in such manner, in person or in writing, as the director may prescribe. Every individual filing claim for benefits shall report whenever duly called for work through the employment office, and shall make an active, independent search for suitable work. No individual shall be eligible for benefits for any week in which he fails, without good cause, to comply with the requirements as set forth hereinabove."

As is evident from this statutory language, § 28–44–12 requires a claimant to prove that the claimant is totally or partially unemployed, that the claimant is available for work, and that the claimant has registered with DES and conducted an active, independent search for work.

Applying this test, the District Court judge agreed with DES that plaintiff became totally unemployed on March 25, 1986, the date plaintiff took a leave without pay. The General Assembly defined total unemployment in G.L.1956 (1986 Reenactment) § 28–42–3(15), which states:

"An individual shall be deemed totally unemployed in any week in which he performs no services * * * and for which he earns no wages * * * and in which he cannot reasonably return to any self-employment in which he has customarily been engaged."

Both the District Court judge and DES concluded that plaintiff became totally unemployed from March of 1986 because from that time forward plaintiff performed no services and received no wages. There being nothing to the contrary in the record, we believe that the District Court and DES implicitly concluded that plaintiff could not return to self-employment. The District Court judge also believed that plaintiff satisfied the second requirement, availability for work, because plaintiff "was not otherwise engaged" in other employment. The District Court judge found, however, that plaintiff never complied with the third requirement found in § 28–44–12. The evidence established that plaintiff never registered for work at a DES office, nor did plaintiff conduct an active and independent search for suitable work during the period of his suspension. Accordingly the District Court judge affirmed the DES decision that plaintiff was ineligible for benefits.

In arguments before DES and the District Court, plaintiff relied on the portion of § 28–44–12 that states that "[n]o individual shall be eligible for benefits for any week in which he fails, without good cause, to comply with the requirements as set forth hereinabove." The plaintiff argued that he had good cause for failing to comply with the requirements of § 28–44–12 because plaintiff believed he was ineligible for benefits during the period of his suspension. The District Court judge and DES disagreed and concluded that plaintiff's subjective understanding of his eligibility for benefits did not constitute good cause for not complying with § 28–44–12.

The District Court judge also affirmed DES on the ground that plaintiff was monetarily ineligible for unemployment benefits pursuant to § 28–44–11, which at the time of plaintiff's claim for benefits stated in pertinent part:

"*Earnings requirement for benefits.*—An individual shall be deemed eligible for benefits for any given week of his unemployment only if he has within the base period immediately preceding the benefit year in which that week of unemployment occurs earned wages amounting to at least twenty (20) times the minimum hourly wage as defined in chapter 42 of this title in each of at least twenty (20) weeks, or, in the alternative, in an amount equal to three (3) times the total minimum amount hereinabove required."

The "benefit year" for plaintiff in this case commenced on May 29, 1987, the date plaintiff filed for benefits. Section 28–42–3(12)(A). According to § 28–42–3(10), "base period" means "the fifty-two (52)

consecutive calendar weeks ending with the second week immediately preceding the week in which that benefit year begins." In the base period applicable to plaintiff, plaintiff did not earn any wages because plaintiff was on a leave without pay. Consequently plaintiff failed to satisfy the earnings requirement found in § 28–44–11.

In addition to plaintiff's failing to meet the earnings requirement of § 28–44–11 and the eligibility requirements found in § 28–44–12, the District Court judge affirmed DES on the ground that plaintiff failed to establish a waiting period in compliance with § 28–44–14(c). Two rules promulgated by DES explain this waiting-period requirement. Employment Security Rule XXIII states that a claimant establishes a waiting period by reporting to a local DES office "within seven (7) days of the last day of employment." Employment Security Rule XIX(C) states that "[a]ny individual who fails without good cause to report in accordance with these provisions shall not be eligible to receive benefits for the week(s) in which such failure occurs." In this case DES found that plaintiff had failed to demonstrate good cause for failing to report to a local DES office and accordingly denied plaintiff's claim for benefits.

In addition, DES refused to "backdate" plaintiff's claim to March 26, 1986. Apparently DES interprets Employment Security Rule XIX as providing an avenue for the backdating of a claim if a claimant can show good cause why the claimant failed to file a claim in a timely manner. Concluding that plaintiff did not show good cause for failing to file a timely claim, DES denied plaintiff's request for backdating.

## II

In this petition for certiorari, plaintiff argues (1) that DES and the District Court erred in concluding that plaintiff became totally unemployed on March 26, 1986, the date plaintiff took an indefinite leave without pay, and that the correct date of total unemployment was March 29, 1987, the date the Department of the Attorney General fired plaintiff, (2) that as a factual matter Attorney General Violet "deterred" plaintiff from filing for unemployment benefits, and that in light of this deterrence DES should have backdated plaintiff's claim to March of 1986, and (3) that a letter written by Attorney General James O'Neil (who succeeded Attorney General Arlene Violet), stating that plaintiff was wrongfully denied employment benefits, was binding on DES.

Pursuant to G.L.1956 (1988 Reenactment) § 42–35–16, this court employs a limited standard of review when reviewing appeals from a decision of an administrative agency pursuant to a writ of certiorari. This court will only review questions of law which appear in the petition. Moreover the grounds for reversal of an administrative decision must appear on the face of the record before us. *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d 480, 482 (R.I.1980). When faced with factual disputes, this court will not weigh the evidence. We shall search for any legally competent evidence that supports the decision under review. *Id.*

Applying this standard of review to the case before us, we find plaintiff's arguments to be without merit. The plaintiff's first argument, that plaintiff did not become totally unemployed until the Department of the Attorney General fired him on March 29, 1987, is inconsistent with the plain language of § 28–42–3(15), which states that a claimant is totally unemployed when the claimant performs no services, receives no wages, and cannot return to self-employment. This clearly occurred on March 26, 1986, the date plaintiff took a leave without pay.

We also do not agree with plaintiff's argument that he was deterred from filing for unemployment benefits, and that as a result DES should have backdated his claim to March 26, 1986. The referee who reviewed this case wrote, "The record is void of any evidence to indicate that the claimant was in any way barred or deterred from filing a claim for benefits in a timely manner by any representative of the De-

partment of Employment Security." In addition, there was no evidence of any action by Attorney General Violet or her agents that deterred plaintiff from filing a claim. In compliance with the standard of review set forth in § 42–35–16, this court has searched the record for evidence to support the findings of DES. We agree with the District Court judge that plaintiff has presented no evidence establishing that either Attorney General Violet or a DES agent deterred him from filing a claim. Accordingly DES properly denied plaintiff's request for backdating because plaintiff had failed to demonstrate good cause for failing to file a timely claim.

Finally there is no merit to the plaintiff's argument that the opinion letter written by Attorney General O'Neil, stating that DES wrongfully denied the plaintiff unemployment benefits, should be binding on DES. The General Assembly vested DES with the statutory authority to render decisions concerning claims for employee benefits. The Department of the Attorney General has no such statutory authority, and accordingly, DES is not bound by the opinion of the Attorney General.

For these reasons we deny the plaintiff's petition for certiorari, quash the writ previously issued, and affirm the judgment of the District Court.